UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10994-NMG

PARENTS OF DANIELLE
    Plaintiff,

V.

MASSACHUSETTS DEPARTMENT OF
EDUCTION, DAVID P. DRISCOLL,
COMMISSIONER; and SCHOOL
COMMITTEE FOR THE TOWN OF
SHARON: SAM LIAO, ANDREW
NEGENZAHL, DONALD GILLIGAN, JANE
FURR, MITCH BLAUSTEIN and SUZANNE
PEYTON
    Defendants

## PARENTS' OPPOSITION TO SHARON SCHOOL COMMITTEE'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF COMPLAINT

*Parents of Danielle*, Albert Benson and Diane Benson, oppose Sharon School Committee's Motion for Summary Judgment on Count II of their Complaint. In support of their opposition, they rely upon their own affidavits, and that of counsel, filed with this opposition.

1. Introduction

    Danielle is a student in the Sharon Public Schools. Plaintiffs pursued a ruling of the Massachusetts' Bureau of Special Education Appeals (*"BSEA"*) that Danielle should be enrolled

1

at the Landmark School. Landmark is an approved, private school specializing in language based learning disorders, providing a specialized language-based curriculum.

*BSEA* ruled that Danielle's in-school program was insufficient. However, rather than order out of district placement at Landmark, it ordered programmatic changes within the public school.

*Parents* filed their complaint in this court, appealing the *BSEA* order. In particular, they appeal the refusal of an out of district placement, and the substitution of a program which had not previously existed.

From and after the *BSEA* decision, *Parents'* and *School's* attorneys explored negotiations regarding *Parents'* claims for costs and fees. They also exchanged and discussed proposed text. By this motion, *School* seeks to enforce an alleged oral agreement between counsel that *School* would pay $30,000.00 on account of *Parents'* claims for counsel fees, in exchange for a dismissal of that count. However, Parents never agreed to any settlement terms, the parties never agreed to any written terms and conditions, and even now. Sharon has not yet responded in regard to a particular issue concerning whether it agreed, or agrees, to reservation of certain material rights by parents. Therefore, Sharon's motion is premature, at the least, and the motion should be denied.

## Statement of Facts

1.  Danielle attends Sharon Public Schools. In the summer of 2003, Parents requested a hearing at the Massachusetts' Bureau of Special Education Appeals *("BSEA")*. Dissatisfied with special education services offered by *School*, *Parents* asked that Danielle be placed at the Landmark School, an out of district private school specialized in teaching children with language based learning disorders. *Father Aff. par. 1; Mother Aff. par. 1.*

2.      A *BSEA* hearing was held on October 2, 3, and 22, 2003. *Father Aff. par. 2, Mother Aff. par. 3.*

3.      The *BSEA* issued decisions on January 12, 2004 that (a) *School* was not providing *FAPE*; (b) *School* should locate or create an appropriate program for Student; and (c) *School* should engage and pay for an independent evaluator to determine if *School* could change its program to make it appropriate for Danielle. On April 20, 2004 *BSEA* ruled and found that *School's* could and should modify the program offered to Danielle, based on the outside evaluator's report. *Father Aff. par. 3, Mother Aff. par. 4.*

4.      In June, 2004, *School* made a specific monetary offer to settle counsel fees associated withe the *BSEA* proceedings. . *Parents* did not accept that offer. *Father Aff. par. 4, Mother Aff. par. 5.*

5       *Parents* then filed for relief in this court, asking for counsel fees under to *20 USC s. 1315 (i )(3) (b),* since they were the prevailing party at the *BSEA. Father Aff. par. 5, Mother Aff. par. 6.*

6       On or about January 5, 2005, *Parents* received an Offer of Judgment in regard to settlement of attorneys fees. The did not accept the offer. *Father Aff. par. 6, Mother Aff. par. 7.*

7.      At the end of 2004, Atty. Ruth Bortzfield informed *Parents* that she was unable to continue representation due to personal reasons.. Parents then undertook to find alternative representation. *Father Aff. par. 7, Mother Aff. par. 8.*

8.      Even so, Attys. Bortzfield and Atty. Richardson, explored settlement of Count II, doing so both orally and in writing, that being represented in *School's* motion. *Father Aff., par. 10, Mother Aff., par. 11.*

9. Parents never accepted any offer from Sharon. They never authorized Atty. Bortzfield to accept or reject any offer or agreement on their behalf. *Father Aff., pars. 8- 11, Mother Aff. pars. 9-12.*

10. Plaintiff, Diane Benson, expressly rejected Sharon's offer to pay $30,000.00 for legal fees, *Mother Aff., par. 10..*

11. Plaintiffs, Diane and Albert Benson, authorized Atty. Bortzfield to solicit settlement offers, and to present any such offer to Parents for their consideration. *Father Aff., par. 10, Mother Aff. par. 11.*

12. Parents never authorized binding settlement negotiations of any kind. They never authorized acceptance of any offer. *Father Aff., par. 11, Mother Aff. par. 12.*

13. Atty. Bortzfield and Parents negotiated Atty. Bortzfield's fees, but no agreement was reached during the time period of her representation. *Father Aff., par. 12, Mother Aff. par. 13.*

14. The parties agreed to continuance of a scheduling conference before the Court, to allow Parents to find new counsel. *Richardson Aff. par. 7.*

15. Parents first interviewed with Atty. Cline on January 21, 2005. Soon after, they requested representation by Atty. Cline. Upon her agreement to undertake representation, Parents informed Atty. Bortzfield that they had selected new counsel, but that Atty. Cline's availability was not until much later in the season, due to illness in her family. *Father Aff., par. 13, Mother Aff. par. 14. Cline Aff. par. 2.*

16. By letter dated February 17, 2005 from Atty. Richardson to Atty. Bortzfield, Atty. Richardson forwarded a proposed draft agreement, expressly reserving her client's rights to review and consider same. *Ex. 1.*

17.   On or about March 3, 2005, Atty. Bortzfield formally transmitted Sharon's offer of settlement and draft agreement for their review. *Father Aff., par. 14, Mother Aff. par. 15.*

18.   Within a week, on or about March 10, 2005, Parents requested Atty. Cline review the proposed settlement terms and text. *Father Aff., par. 15, Mother Aff. par. 16, Cline Aff. par. 3.*

19.   On March 15, 2005, Atty. Cline reviewed the proposed settlement terms as requested, and conferred with Parents. Within several days later, she was authorized to call Atty. Bortzfield to tell her that. Parents did not accept the offer, and did so. *Father Aff. par. 16, Mother Aff. par. 17, Cline Aff. par. 4.*

20.   Atty. Bortzfield withdrew her appearance at the very end of March, 2005. *Father Aff., par. 17, Mother Aff. par. 18, Cline Aff. par. 5.*

21.   On April 4, 2005, Atty. Richardson then left telephone word for Atty. Cline. Atty. Cline instructed her secretary to inform Atty. Richardson that she, Atty. Cline, intended to undertake representation, but was as yet substantially unavailable to talk due to family illness and previously scheduled obligations. *Cline Af. Par. 6.*

22.   Atty. Cline was finally available just prior to this Court's status/scheduling conference rescheduled for April 15, 2005. Atty. Cline and Atty. Richardson spoke by phone. They also spoke briefly in person, both before and after that hearing. Atty. Cline directly stated that Parents were not able to settle for $30,000 unless and until matters were appropriately resolved with Atty. Bortzfield (or words to that effect), and that Parents did not agree to waive fee claims arising from success in these court proceedings, or words to that effect. *Father Aff., par. 18, Mother Aff. par. 19, Cline Aff. par. 7.*

23.   In regard to settlement language, Atty. Richardson said that this reservation may well

4

have been what her client understood and agreed to, or words to that effect. Atty. Richardson said she would have to check with her client, *i.e.* to check on their understanding of the agreement in this regard. *Cline Aff. par. 8, 10.*

24. Atty. Cline then spoke with Atty. Bortzfield, and settled the matter of the amount of Atty. Bortzfield's fees as authorized by parents. That enabled Parents to agree to the dollar amount of Sharon's offer, that being $30,000.00. *Father Aff., par. 19, Mother Aff. par. 20.*

25. On May 2, 2005, Atty. Richardson left word that she had not yet heard from her client. On that basis, she left word authorizing an extension of time for Parents' opposition, and authorizing Atty. Cline to sign her name to same. An extension was filed to May 9, 2005. *Cline Aff. par. 15.*

26. Atty. Cline still had no word from Atty. Richardson through Wednesday, May 3, 2005. Atty. Cline left word by voice mail and through receptionists, but there was no response. *Cline Aff., par. 16.*

27. On or about May 4, 2005, Atty. Cline faxed a message to Atty. Richardson to the effect that if Sharon agreed that Parents reserved fee claims arising from the instant proceedings (or words to that effect), then she could consider the matter settled. *Cline Aff., par. 17.*

28. Atty. Cline received no response through the close of business on Friday, May 5, 2005. *Cline Aff. par. 18.*

29. Parents are willing to accept Sharon's offered dollar settlement, provided that settlement expressly applies only to fees accrued to the date of settlement, but not otherwise. *Father Aff., par. 19, Mother Aff. 20, Cline Aff. par. 19.*

## ARGUMENT

**I.   There is no settlement to enforce.**

While the federal district court certainly has the power to enforce a settlement agreement in regard to a matter which is before that court, there first has to be a settlement agreement to enforce. Sharon alleges that the parties entered into an agreement to settle Count II of Parents' Complaint for $30,000.00, in exchange for dismissal of the claim. Parents dispute that, as set forth in their supporting affidavits. However, that dispute need not be reached or determined in order to determine this motion. There were other terms and conditions which were not expressly agreed upon.

Sharon alleges that all material terms and conditions were agreed upon. However, in regard to the preservation of *Parents'* rights to claim further fees associated with these federal court proceedings, Atty. Richardson said she thought that her client may well have understood that to be reserved, but she would have to check with her client. *Cline Aff., par. 8.* She, herself, did not know. Therefore, either the materiality of the term was not recognized, or the term was not expressly considered, and remained to be determined. In either event, there could be no full agreement absent agreement on that issue. To date, there has been no further word about this from *School. Cline Aff. pars. 7, 8, 15-18.*

Sharon's argument considers two sets of settlement terms and conditions: "material" terms and conditions, and so-called boilerplate terms and conditions. In parsing between such terms and conditions, Sharon's argument depends upon an assumption. Sharon assumes that terms which attorneys consider "boilerplate" should not be considered to be *material* terms and conditions.

The argument should not be persuasive. To become "boilerplate," such terms and conditions must first have become so widely required by attorneys and parties that the terms constitute the very *sine qua non* of any such a settlement. To have become so widely demanded and used, those terms must be considered essential. If they are essential, they cannot be considered less than material. Further, materiality of terms and conditions varies between individual claimants, being a subjective issue, and being an issue related to what is important to the individual. In any event, in contradistinction to their claim that there was an authorized agreement to dismiss Count II for $30,000.00, Sharon does not claim that such "boilerplate" terms were authorized by Parents.

*School* properly discloses that even the "boilerplate" terms were the subject of back-and-forth negotiations, based on red-lined exchanges of proposed draft agreements. The opposing drafts contained terms which were significant enough to negotiate, and significant enough to red-line. Therefore, these terms and conditions were much more than incidental. While counsel may well have finally reached a uniform text to recommend to their respective clients, *School* does not allege any such written agreement was accepted and agreed upon by Parents. The argument is simply that those terms should not be considered important enough to demonstrate absence of an agreement. Indeed, *School's* only claim of agreement is based upon an allegation of apparent authority.. That is in the context of Atty. Richardson having reserved her own client's rights to review the proposed written documents, *i.e. reserving* agreement, and Atty. Bortzfield's anticipated departure from the case.

For these reasons, Parents ask that *School's* motion be denied. While the distance between the parties has narrowed further since Atty. Cline's appearance, there was no acceptance

of *School's* offer of $30,000.00 until last week, well after the current motion was filed; and acceptance is expressly conditioned upon Parents' reservation of the right to claim counsel fees on account of *current* proceedings.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1 (A)(2), counsel for Parents certifies that she has attempted to confer with counsel for plaintiffs about the issues raised in both Sharon's motion and this opposition, but has not been successful as counsel for plaintiffs has not replied to her attempts at communication as set forth in her Affidavit.

Parents, by Counsel:

Alanna G. Cline, Atty.
BBO 086860
300 Market St.
Brighton, MA 02135
(617) 783 5997
May 9, 2005

Certificate of Service

I hereby certify that a true copy of the above document
was served upon the attorney of record for each party by
first class mail postage prepaid on this date.


**DEUTSCH | WILLIAMS**

99 Summer Street
Boston, MA 02110-1213
617.951.2300
617.951.2323 fax

February 17, 2005

Ruth N. Bortzfield, Esq.
462 Boston Street, Suite 3
Topsfield, MA  01983

    **RE:   Benson v. Sharon Public Schools**

Dear Attorney Bortzfield:

    Enclosed is a draft settlement agreement for your review. I have not yet had the opportunity to show it to my client, so must reserve the right to make changes. Please call me after you have had the chance to review the agreement.

    Thank you.

                                                 Sincerely,

                                               Tammy L. Richardson

TLR:rdm
Enclosure
cc:    Judy Levin-Charns, Ed. D., Director of Student Services (w/out enclosure)
        Barry L. Mintzer, Esq., (w/o encl.):

DWLIB 175885v1
129/00

---

DEUTSCH | WILLIAMS | BROOKS | DERENSIS & HOLLAND, P.C.   *Attorneys at Law*