UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PARENTS OF DANIELLE

       Plaintiff,

vs.

MASSACHUSETTS DEPARTMENT OF
EDUCATION, DAVID P. DRISCOLL,
COMMISSIONER and SCHOOL
COMMITTEE FOR THE TOWN OF
SHARON:  SAM LIAO, ANDREW
NEBENZAHL, DONALD GILLIGAN, JANE
FURR, MITCH BLAUSTEIN, AND
SUZANNE PEYTON

       Defendants,

Civil Action No.  04-10994-NMG

## SCHOOL COMMITTEE DEFENDANTS' MEMORANDUM IN SUPPORT OF (1) MOTION TO STRIKE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE (2) OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

The Defendants, School Committee for the Town of Sharon, Sam Liao, Andrew Nebenzahl, Donald Gilligan, Jane Furr, Mitch Blaustein, and Suzanne Peyton ("School Committee Defendants"), hereby move to strike Plaintiff's Motion for Summary Judgment.  In the alternative, the School Committee Defendants oppose Plaintiff's Motion for Summary Judgment, ask that it be denied, and ask that Summary Judgment enter in favor of the School Committee Defendants.

In support thereof, the School Committee Defendants rely on the affidavit of Tammy L. Richardson, filed herewith, and state as follows.

## INTRODUCTION

The Plaintiffs failed to prosecute its case, leading the School Committee Defendants' to file a now pending Motion to Dismiss.   Plaintiffs have now filed[1] a Motion for Summary Judgment, in which they seek judgment on Count I of their Complaint, seeking compensatory damages for the 2003-2004 school year.   Plaintiff's motion for summary judgment should be stricken, due to Plaintiffs' continued and inexplicable failure to (a) meet a single Court-ordered deadline established at the Scheduling Conference on April 15, 2005, or (b) comply with their discovery obligations prior to filing their motion.   If the Motion for Summary Judgment is allowed to stand, it should be denied on substantive grounds, as it is unfounded and without merit.   In addition, as set forth below, summary judgment should enter in the School Committee Defendants' favor on Count I.

## FACTS RELEVANT TO THE MOTION TO STRIKE

1.    This Court held a scheduling conference on April 15, 2005.   At that conference, Plaintiff's counsel emphasized that time was of the essence and the parties agreed on the following deadlines, which the Court then entered as an order:

> a.    Initial disclosures pursuant to F.R.C.P. 26(a)(1) due on May 20, 2005;
>
> b.    Plaintiffs' expert disclosure due on June 10, 2005;
>
> c.    Defendants' expert disclosure due on June 20, 2005;
>
> d.    Discovery requests to be served by June 10, 2005;
>
> e.    Responses to discovery requests due on July 10, 2005;
>
> f.    Plaintiffs' summary judgment motion due on July 11, 2005;

---

[1] This filing is filed five months beyond the date established by this Court.

      g.     Defendants' opposition and any cross-motion for summary judgment due on July 25, 2005;

      h.     Plaintiffs' response to any cross-motion due on August 8, 2005.
Richardson Aff., ¶2.

2.     At the Scheduling Conference, the Court indicated that it could potentially decide this matter on motion, without need for a trial, and that it would determine whether a trial was necessary only after reviewing the summary judgment motions of the parties.   Richardson Aff., ¶3.

3.     Plaintiffs failed to serve the School Committee Defendants with Automatic Disclosures pursuant to F.R.C.P. 26(a)(1), either by the mandated May 20, 2005 deadline, or at any time subsequent thereto.   Richardson Aff., ¶4.

4.     Plaintiffs did not designate an expert or serve any discovery requests.[2]   Because Plaintiffs did not designate an expert, the School Committee Defendants also chose not to designate an expert.  Richardson Aff., ¶5.

5.     The School Committee Defendants served Plaintiffs with document requests on June 8, 2005.  To date, Plaintiffs have not responded to those requests.  Richardson Aff., ¶6.

6.     Plaintiffs filed their summary judgment motion on December 8, 2005, *five months* after the deadline ordered by the Court, and without ever serving automatic disclosures or answering the School Committee Defendants' document requests.   Richardson Aff., ¶7.

7.     Plaintiffs have not requested from the School Committee Defendants, nor received, an extension to any of the above referenced deadlines.  On August 3, 2005, Plaintiffs filed an opposition to the School Committee Defendants' Motion to Dismiss, which

---

[2] Admittedly, Plaintiffs may well intend not to use an expert witness and may have decided they do not need discovery.   The School Committee Defendants include this fact simply to give the Court a complete picture of what has transpired since the Scheduling Conference.

acknowledged that Plaintiffs owed the School Committee Defendants responses to document requests, and specifically asked the Court for "no more than a 35-day time extension" for fulfilling all of Plaintiffs' obligations.    Richardson Aff., ¶8.

## FACTS RELEVANT TO THE SCHOOL COMMITTEE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

8.    A hearing was held in this matter on October 2, 3 and 22, 2003 at the Bureau of Special Education Appeals (BSEA) in Malden, MA.    In the administrative hearing, the Hearing Officer was asked to answer the following four questions:

a.    Do the IEPs designating a program at the Sharon Middle School resulting from a TEAM meeting on April 1, 2003, covering the period from March 24, 2003-March 24, 2004 provide Danielle with a free appropriate public education (FAPE) in the least restrictive environment (LRE)?

b.    If not, will accommodations or modifications to Sharon's current program provide Danielle with a FAPE in the LRE?

c.    If not, does Student require an out of district *day program*[3] at Landmark to achieve a FAPE in the LRE? (emphasis added)[4]

[AR, Vol I, p. 182].[5]

---

[3] In Plaintiffs' Motion, they twice refer to a "residential placement" for Danielle.    However, the Complaint does not specifically seek a residential placement, and this was not included in the Hearing Officer's statement of the issues before her.    Therefore, although it is far from clear that Parents are actually seeking a residential placement for Danielle, this should not be considered before this Court, due to Parents' failure to raise this issue below.    See David D. v. Dartmouth School Committee, 775 F.2d 411, 424 (1st Cir. 1985);    Greene v. Harrisville School District, 771 F.Supp 1, 3, n. 2 (D.N.H. 1990);    B.H. v. Southington Board of Education, 273 F.Supp.2d 194, 199-200 (D. Conn. 2003).

[4] A fourth issue was also presented involving Parents' claim for compensatory damages resulting from their claim that Sharon did not provide speech/language services subsequent to December, 2000.    However, that claim is not the subject of this case and therefore will not be explored further herein.

[5] Citations to "AR" are to the Administrative Record.

9.     The Hearing Officer was not asked to consider whether Danielle requires a residential program, and evidence was not presented on this issue.[6]

10.    On January 12, 2004, the Hearing Officer, Joan Beron, issued her preliminary decision (the "Decision"). The Decision concluded, *inter alia*, that Danielle did not require an out of district day program at Landmark to achieve a free appropriate public education ("FAPE") in the least restrictive environment ("LRE"). The Decision also concluded that Sharon's program, while having many positive attributes, was also inappropriate for reasons set forth in the Decision. To deal with these dual findings, the Hearing Officer ordered Sharon to take the following steps:

    a.    Locate or create a language-based program that provided the agreed-upon special education support with math word problems during the school year, consultation from Danielle's special education providers and daily phonics-based instruction in reading and writing;

    b.    Locate or create a language-based summer program (for the summer of 2004) that would include Fast Forward and/or LiPs instruction;

    c.    Fund an independent evaluator approved by the Hearing Officer to speak to Danielle about all options, including Landmark, view Sharon's then-current program, and provide a report to the Hearing Officer and the Parties.

[AR, Vol. I, pp. 181-213].

11.    Pursuant to her Decision, Ms. Beron presented Sharon with the names of two qualified evaluators and Sharon selected Joan Axelrod, M.Ed. Ms. Axelrod observed Danielle in her classes at Sharon Middle School on January 27, 2004.   On January 28, 2004, Ms. Axelrod participated in a conference call with the Hearing Officer, Sharon's attorney and Parent's attorney to discuss her findings and observations. During that conference call, Ms. Axelrod

---

[6] The Hearing Officer did comment in the decision that "Landmark's residential program could be an option," but discounted it as Landmark was found not to be the LRE.   [AR, Vol. I, p.212].

stated her conclusion that the Student should and could remain in Sharon if certain changes to her then-current program were made.   Ms. Axelrod issued a written report consistent with this opinion on February 10, 2004.  Richardson Aff., ¶10.

12.    The hearing was reconvened at Parents' request on March 10, 2004, solely to determine whether Sharon's program could be modified to provide FAPE.   Parents offered rebuttal testimony by Dr. Robert Kemper.  Richardson Aff., ¶11.

13.    On April 20, 2004, Ms. Beron issued her final decision (the "Final Decision"). The Final Decision denied Parents' request for a private day program at Landmark and ordered Sharon to amend Danielle's IEP as follows:  (a) to include an individual 1:1 tutorial in decoding, reading comprehension and fluency;  (b) to add a language immersion summer program;  (c) to provide consultation among the speech and language pathologist, special education teacher and Ms. Axelrod and classroom teachers to make inclusion classes more language-based;  (d) to provide a  FastForward tutorial during the summer; and (e) to monitor Danielle's progress by an outside evaluator.  [AR, Vol. I, p. 258].

14.    Subsequently, Sharon located a summer program at the Landmark School, and parents agreed that Danielle would attend that program.  [AR, Vol. I, p. 263].

15.    On May 14, 2004, the Plaintiffs herein filed this action.  [AR, Vol. I, p. 264].

16.    Danielle attended Sharon's schools during the 2004-2005 school year, and received services as provided in her IEP which had been amended pursuant to the Hearing Officer's order.  See Complaint at ¶11.


**ARGUMENT**

I.    **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FILED BY SHOULD BE STRICKEN FOR FAILURE TO RESPOND TO DEFENDANTS' DISCOVERY REQUESTS; SCHOOL COMMITTEE DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED**

The Court's order entered after the Scheduling Conference clearly provided for the completion of discovery prior to the filing of a Motion for Summary Judgment.   The Plaintiffs have brazenly disregarded that order, violated all deadlines, ignored the discovery requests of the School Committee Defendants, and filed their Motion for Summary Judgment without complying with any discovery obligations.   This behavior justifies striking the Motion for Summary Judgment in its entirety, and allowing the previously filed Motion to Dismiss by School Committee Defendants.

A court may strike a pleading due to a party's failure to comply with its discovery obligations.   See Sears, Roebuck & Co. v. Goldstone & Sudalter, P.C., 128 F.3d 10, 18, n. 7 (1st Cir. 1997) (court was "well within its discretion" in striking the affidavit of a witness whose identity was not disclosed pursuant to F.R.C.P. 26(e) at the outset of the litigation; Klonoski v. Mahlab, 156 F.3d 255 (1st Cir. 1998) (admission of letters at trial which had not been disclosed during discovery held erroneous); Saudi v. Valmet-Appleton, Inc., 219 F.R.D. 128 (E.D. Wi. 2003) (court excluded plaintiff's lay witnesses and expert testimony due to his failure to disclose those witnesses pursuant to the Federal Rules of Civil Procedure and court's scheduling order, finding no justification for delay).

In this case, there is no basis for the Plaintiffs' failure to comply with their discovery obligations, and they have offered none.   In Plaintiffs' opposition (filed on August 3, 2005) to School Committee Defendants' Motion to Dismiss, they asked for "no more than" a 35 day extension of time in which to complete their discovery responses and proceeded to ignore their own deadline.   Plaintiff's failures are potentially prejudicial to the School Committee

Defendants: Parents assert in their Motion[7] that Danielle has "lost a year of her education" (with no citation to the record). The School Committee Defendants' document requests[8] seek information in Plaintiffs' control regarding Danielle's progress while at the Sharon Public Schools during 2003-2004, the year in which Plaintiffs claim she lost a year of her education. [9] By refusing to comply with these discovery obligations, Parents seek to unfairly control the universe of information available to the parties and this Court, [10] a litigation strategy which should not be tolerated.  This Court should strike the Motion for Summary Judgment, and grant the School Committee Defendants' previously filed Motion to Dismiss, dismissing this matter with prejudice.

## II.    THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

As set forth above, the Court should not entertain Plaintiffs' Motion for Summary Judgment.  However, if it chooses to do so, the Motion should be denied, for the reasons set forth below.

In reviewing this case, the Court should make an independent decision based upon a preponderance of the evidence, while giving "due weight" to the results of the BSEA proceedings, being careful to avoid "imposing [its] view of preferable educational methods upon

---

[7] Plaintiffs claim that Sharon and the Hearing Officer "compromised Danielle's access to academic content, achievement, and progress."  [Motion for Summary Judgment, page 18].

[8] These requests are attached to the Richardson Affidavit as Exhibit A.

[9] Specifically, the requests seek  (a) documents concerning educational, behavioral, psychological, or other testing of Danielle which have occurred since the BSEA Hearing;  (b) documents concerning opinions given to Plaintiffs since the Hearing regarding Danielle, by any educator, physician, psychiatrist, psychologist, social worker, or speech pathologist, and (c) documents concerning Student's educational progress, or lack thereof, since the Hearing.

the States." Abrahamson v. Hershman, 701 F.2d 223, 230 (1st Cir. 1983). See also Stein v. Independent School District, No. 196, Rosemount-Apple Valley-Eagan, 135 F.3d 566, 569 (8th Cir. 1998), citing Hendrick Hudson Dist. Bd. of Ed. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982); Ojai Unified School District v. Jackson, 4 F.3d 1467, 1472 (9th Cir. 1993). "...[C]ourts have exhibited an understandable reluctance to overturn a state education agency's judgment calls in such delicate areas [as choices among educational policies and theories] -- at least where it can be shown that the IEP proposed by the school district is based upon an accepted, proven methodology." Roland M. v. Concord School Committee, 910 F.2d 983, 992 (1st Cir. 1990). Beyond the "broad questions of a student's general capabilities and whether an educational plan identifies and addresses his or her basic needs, courts should be loathe to intrude very far into interstitial details or to become embroiled in captious disputes as to the precise efficacy of different instructional programs." Roland at 992.

As the party challenging the outcome of state administrative hearings, the Parents have the burden of proof. Stein v. Independent School District, No. 196, Rosemount-Apple Valley-Eagan, 135 F.3d 566, 569 (8th Cir. 1998); Hampton School Dist. v. Dobrowolski, 976 F.2d 48, 54 (1st Cir. 1992). As set forth below, Parents cannot meet this burden.

A.    **Plaintiffs' Motion for Summary Judgment Should be Denied, Because Parents Seek Compensatory Damages, Which are Unavailable as a Matter of Law**

Count I of the Complaint is titled "Parent's Case for Compensatory Damages." It alleges the following; (a) Danielle did not receive a FAPE from March 2003 through March 2004; and (b) because Danielle did not enter Landmark in January 2004, she was denied a FAPE for the

---

[10] As the LEA, Sharon also possesses pertinent information regarding Danielle's progress during the 2003-2004 school year. This, however, does not excuse Parents from complying with their discovery obligations to disclose what pertinent information they also possess.

2003-2004 School Year.   In their Prayer for Relief, Parents seek an order that Sharon must "pay compensatory damages to the plaintiff in an amount equal to the cost of placement at Landmark Schools for the 2003-2004 school year."

Absent "exceptional circumstances" a monetary award is inappropriate under IDEA. B.H. v. Southington Board of Education, 273 F.Supp.2d 194, 202-203 (D. Conn. 2003). Exceptional circumstances may exist where the LEA "egregiously fails" to comply with the procedural requirement of IDEA, or where a parent is forced to remove his or her disabled child from school because the school is not providing the appropriate services to protect the child from harm.  Id.  Compensatory damages are "limited to providing parents with the costs of services they unilaterally obtained and paid for, but that should have been provided to them without cost. The IDEA was not intended to be used as a means to recoup tort damages." Id. at 203.  See also Gerasimou v. Ambach, 636 F.Supp. 1504, 1512 (E.D.N.Y. 1986) ("[s]o long as the school district and the state make a good faith effort to evaluate and place a child correctly, damages are not an appropriate remedy under the EAHCA... the Act was never intended to allow an individual to collect a monetary award simply because there may have been some misjudgment in the placement of a child.  Money damages are only warranted where there has been a bad faith and egregious failure to comply with procedural provisions" of the Act.)

The case of Brantley v. Independent School District No. 625, 936 F.Supp. 649 (D. Minn. 1996), is directly on point.  In Brantley, the parents of a special education student sued for monetary damages, alleging that compensatory education damages were owed because the student had allegedly been denied FAPE during years when he had attended the public schools but allegedly should have been placed at a private school.  The Court ruled that these damages were unavailable as a matter of law.  Id. at 654.  It ruled that in a situation where a student had

attended public school, and therefore plaintiffs did "not seek actual reimbursement for costs associated with a unilateral placement of [student] in a private school for those years," monetary damages due to an alleged denial of FAPE were unavailable under IDEA. Id.

In this case, Danielle attended the Sharon Public Schools during the 2003-2004 school year, receiving additional services pursuant to the Hearing Officer's order. Parents elected not to withdraw Danielle from school and unilaterally send her to Landmark, a move that could arguably could have entitled them to monetary damages had they prevailed in this action. In addition, they have not alleged facts sufficient to state the "exceptional circumstances" necessary for compensatory damages. Therefore, compensatory damages are unavailable, and Count I must fail as a matter of law.

### B.    Parents' Argument that the Hearing Officer Ordered a "New, Untried Program" for Danielle and Thereby Denied her FAPE is Specious and Should be Rejected

Parents argue that by ordering Sharon to provide additional services for Danielle, the Hearing Officer created a "new, untried program" for her that denied her FAPE, is without merit and should be disregarded. It is perfectly appropriate – indeed it is routine – for a Hearing Officer to order the provision of additional services to a student as a result of an administrative hearing. See, e.g., Monticello School Dist. No. 25 v. Brock L., 102 F.3d 895, 899 (7th Cir. 1996) (hearing officer rejected the parents' proposed placement of student in a private school, but ordered that modifications be made to the student's IEP to eliminate its deficiencies).

Parents' argument is puzzling. It is in the nature of a LEA's compliance with IDEA that each special education student have a unique plan with services tailored to his or her particular needs. This explains why each student's plan is referred to as an "*individual* education plan," not a "standard education plan." The Hearing Officer's order that a plan be tailored to Danielle's

11

unique needs is not only in full compliance with IDEA, it is the essence of IDEA. Parents'

motion for summary judgment should be denied.

**C.    Parents' Argument that the FAPE Standard Has Been Changed by "No Child Left Behind" is Incorrect and Should be Disregarded.**

Parents argue that the No Child Left Behind legislation ("NCLB")[11] has changed the

relevant standard in IDEA from FAPE to what is "best" for Danielle. Parents are incorrect. The

FAPE standard is specifically incorporated within NCLB. The McKinney-Vento Act, which

was reauthorized in 2002 as part of NCLB, specifies that its purpose is "ensure that each child of

a homeless individual and each homeless youth has equal access to the same *free, appropriate*

*public education*... as provided to other children and youths" (emphasis added). 42 U.S.C.

§ 11431 (2004). In addition, cases decided since the enactment of NCLB confirm that FAPE

remains the standard under IDEA. *See* National Law Center on Homelessness and Poverty v.

New York, 224 F.R.D 314 (E.D.N.Y. 2004).

Under the federal FAPE standard, an educational program must be provided under an IEP

that is tailored to the unique needs of the disabled child and meets all the child's identified

special education and related service requirements. This includes academic, physical, emotional

and social needs; 34 C.F.R. 300.300(3)(ii); Lenn v Portland School Committee, 910 F. 2d 983

(1st Cir. 1990), cert. Denied, 499 U.S. 912 (1991) and Burlington v Mass. Dept. of Education,

736 F. 2d 773, 788 (1st Cir. 1984). In addition, the IEP must be reasonably calculated to provide

a student the opportunity to achieve meaningful educational progress. This means that the

program must be reasonably calculated to provide effective results and demonstrable

improvement in the various educational skills identified as special needs; Roland v Concord

School Committee, 910 F. 2d 983 (1st Cir. 1990); see also Hampton School Dist. v.

Dobrowolski, 976 F.2d 48, 50 (1st Cir. 1992) (IEP is appropriate under IDEA if it provides

instruction and support services which are reasonably calculated to confer educational benefits to

the student).

Parents have argued that this Court should overturn the Hearing Officer's ruling because

Landmark allegedly has a better program for Danielle.    While Sharon vigorously disputes the

accuracy of such an allegation, the important point is that Parents misunderstand the relevant

legal test.    It does not matter that Landmark may provide Danielle with a better education than

that offered by Sharon.  The IDEA does not require a school district to provide a student with the

best possible education or to achieve outstanding results.    "As long as a student is benefiting

from her education, it is up to the educators to determine the appropriate methodology."    Stein

v. Independent School District, No. 196, Rosemount-Apple Valley-Eagan, 135 F.3d 566, 569

(8th Cir. 1998).  As long as the IEP proposed by Sharon met the minimum federal standard of

appropriateness, IDEA does not require that the district pay for an outside placement at a private

school.  Hampton School Dist. v. Dobrowolski, 976 F.2d 48, 52 (1st Cir. 1992).    In this case,

the IEP as modified by the Hearing Officer was reasonably calculated to confer educational

benefits to Danielle.  Parents have not met their burden of proving otherwise.

D.    **Parents Misunderstand the "Least Restrictive Environment" Test, and
      Misconstrue the Import of the Hearing Officer's decision Concerning the
      Least Restrictive Environment.**

---

[11] Parents refer periodically in their motion to "NLRB".   The School Committee Defendants
presume for purposes of this opposition that Parents intend to refer to NCLB, and that the
National Labor Relations Board has no bearing on this matter.

While acknowledging that IDEA requires that special education students be educated in the least restrictive environment ("LRE"), Parents argue that the LRE requirement must give way to FAPE.   Again, Parents are confused and misinformed.

Sharon has a legal obligation to not only provide FAPE to Danielle, but to do so in the LRE.  This means that to the extent appropriate, students with disabilities must be educated with children who do not have disabilities.  Programs and services can only be implemented in separate settings when the nature and severity of the child's special needs is such that the student can not make meaningful progress in a regular education setting even with the use of accommodations and specialized services; <u>see</u> 20 U.S.C. 1412 (5)(A).   In Massachusetts, the IEP must also enable the student to progress effectively in the content areas of the general curriculum; 603 CMR 28.02 (18).  Massachusetts has defined "progressing effectively in the general education program" as "mak[ing] documented growth in the acquisition of knowledge and skills, including social/emotional development, within the general education program, with or without accommodations, according to the chronological age and expectations, the individual educational potential of the child and the learning standards set forth in the Massachusetts curriculum frameworks and the curriculum of the district"; <u>Id.</u>

In <u>Roland M. v. Concord School Committee</u>, 910 F.2d 983 (1st Cir. 1990), the parents had moved their son unilaterally to Landmark, and claimed that his academic progress there demonstrated the inadequacy of Concord's program.  The court disagreed and commented that even under the "maximum possible development" standard that prevailed at the time (which has since been amended to FAPE), "a program which maximizes a student's *academic* potential does not by that fact alone comprise the requisite 'adequate and appropriate' education."  <u>Id.</u> at 991. "...[T]he issue is not whether the IEP was prescient enough to achieve perfect academic results,

but whether it was 'reasonably calculated' to provide an 'appropriate' education as defined in federal and state law." Id. at 992.   Mainstreaming may "not be ignored, even to fulfill substantive educational criteria... a placement 'which may be considered better for academic reasons may not be appropriate because of the failure to provide for mainstreaming.'" Id. at 993. Evaluating an educational plan "... requires a balancing of the marginal benefits to be gained or lost on both sides of the maximum benefit/least restrictive fulcrum. *Neither side is automatically entitled to extra ballast*." Roland at 993 (emphasis added).

In this case, the hearing officer specifically found that Danielle's program at Sharon, as modified, provided FAPE. [AR, Vol I, p. 256].   She did not sacrifice FAPE to the LRE, as Parents repeatedly insist in their Motion.[12]   In fact, although Parents ignore this finding, the Hearing Officer specifically found that Landmark "did not meet Danielle's individual needs..." [AR, Vol. I, p. 256].   Having determined that Sharon could provide FAPE, she then found that Sharon provides the LRE, as compared to Landmark or a similar school Id.   Also relevant to her decision was the finding that for Danielle to attend Landmark as a day student, she would be subjected to a three-hour round trip commute. [AR, Vol I, pp. 201-202].   As such, her preference for the LRE of Sharon was not only in compliance with IDEA but was rational and reasonable. See Abrahamson v. Hershman, 701 F.2d 223, 230 n. 11 (1st Cir. 1983) (programs located close to a child's home are favored).

### E.   Parents' Claim that the Hearing Officer Condemned All of Sharon's Programming, and Found that Sharon Could not Provide FAPE is Incorrect

Although Parents' exact arguments are not easily parsed from their Motion for Summary Judgment, they appear to make the following claim: (a) The Hearing Officer found that Sharon's IEP for Danielle for the 2002-2003 school year did not provide her with FAPE; (b) therefore, the

Hearing Officer found that a placement at Sharon would not provide FAPE; and (c) because the Hearing Officer ordered that Danielle should remain at Sharon for the 2003-2004 school year, she ordered her to remain in a placement which denied her FAPE. This argument mischaracterizes the Hearing Officer's decision, and is inconsistent with special education law.

Parents seem to argue that because the Hearing Officer found Sharon's 2002-2003 IEP for Danielle to be lacking, no placement at Sharon would provide FAPE.[13] This is an incorrect characterization of the Hearing Officer's ruling. The Hearing Officer found that Danielle's IEP for the 2003-2004 school year, prior to the ordered modifications, did not provide FAPE. This does not translate into a finding that a placement at the Sharon Public Schools can never provide FAPE. Courts have clearly explained that a student's "placement" is not tied to geography - rather, it is defined by the content of the student's IEP and the manner in which it is implemented. See Sherri v. Kirby, 975 F.2d 193, 206 (5th Cir. 1992) (LEA could move student to a different school without changing his "placement". See also Henry v. Sch. Admin. Unit 29, 70 F.Supp.2d 52 (D.N.H. 1999).

In this case, the Hearing Officer found that Danielle's 2002-2003 IEP, which had been implemented at the Sharon Public Schools, had not provided FAPE. This does not translate in to a wholesale condemnation of the Sharon school system, or support an argument that Danielle can never be provided FAPE at that location. There is nothing in the Hearing Officer's decision, or case law, to support this argument.

**F.    Parents' Argument that Danielle's Placement at Sharon Public Schools Compelled her Education with the "Mentally Ill" is Illogical and Offensive.**

---

[12] Notably, they repeatedly insist upon this fact with no citation to the record.
[13] For example, Parents claim that the Hearing Officer "specifically [found] that a program in the public school's learning environment lacked the required IEP elements, lacked efficacy, and lacked teacher certification, nonetheless, it allowed the proposed placement."

Perhaps the most bizarre, illogical and odious of Parents' arguments is the following:

> **"Both federal and state law mandated that Danielle be relieved of participating with a population of students afflicted with bad behavior, sick thinking, and mental health and behavioral treatment in her immediate presence."**

[Motion for Summary Judgment, page 20].   Essentially, Plaintiffs seem to argue that Danielle, who was placed in a mainstream program at Sharon with pull-outs for extra support, was by nature of this placement educated alongside the mentally ill.   For support, Parents cite to Olmstead v. Zimring, 119 S.Ct. 2176, 527 U.S. 581, 144 L.Ed.2d 540 (1999), a case which has no bearing on IDEA or special education.[14]   Plaintiffs understandably cite to nothing in the record in support of this remarkable argument, as there is nothing which could support their claim.

## III.    SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF THE SCHOOL COMMITTEE DEFENDANTS ON COUNT I OF THE COMPLAINT

A district court's review of an administrative decision is limited to an analysis of the following questions:  First, has the State complied with the procedures set forth in IDEA? Second, is the IEP reasonably calculated to enable the child to receive educational benefits? Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690;  Hampton School Dist. v. Dobrowolski, 976 F.2d 48, 52 (1st Cir. 1992).   In looking at the second question, the "ultimate question for a court under the Act is whether a proposed IEP is adequate and appropriate for a particular child at a given point in time.  Roland M. v. Concord School Committee, 910 F.2d 983, 990 (1st Cir. 1990).

---

[14] Olmstead involved the challenge of two mentally ill adult women to the failure to secure their placement in community care residential programs.

In this case, summary judgment should enter in the School Committee Defendants' favor on Count I of the Complaint.   Both questions set forth above can be answered with a resounding "yes."

First, Sharon complied with the procedures set forth in IDEA.   There is no allegation in the Complaint, or in Plaintiffs' motion for summary judgment, that it did not.   As set forth above, Parents have the burden of proof on this issue, and they have failed to meet this burden. Stein v. Independent School District, No. 196, Rosemount-Apple Valley-Eagan, 135 F.3d 566, 569 (8th Cir. 1998);  Hampton School Dist. v. Dobrowolski, 976 F.2d 48, 54 (1st Cir. 1992).

Second, the IEP for the 2003-2004 School Year, with the additional services ordered by the Hearing Officer, was reasonably calculated to enable Danielle to receive educational benefits. This fact is supported by the decisions of the Hearing Officer, and there are no facts or arguments offered by the Parents to rebut it.

The Hearing Officer found that Sharon's original program was lacking in certain areas, and ordered that Sharon fund an independent evaluator to determine if the program could be modified to meet Danielle's needs.   Joan Axelrod was hired as the independent evaluator, and she met with parents, observed Danielle in school, met with her teachers, and conducted testing of Danielle.  She found Danielle to be engaged in her mainstream classes and motivated during her academic lab.  [AR, Vol. I, pp. 247-248].   She concluded that Danielle required a "systematic, sequenced reading decoding program delivered with enough intensity and longevity to address use of more complex words...", so she could "achieve automaticity and more fluency in her reading."  [AR, Vol. I, p. 250].   She also found that Danielle needed additional support in reading comprehension and that Danielle's inclusion teachers would benefit from consultation to

help make language more accessible. She also recommended that Danielle receive an intensive language immersion program in the summer.[15] Id.

Subsequent to Ms. Axelrod's completing her recommendations, conferences were held to explore whether Sharon could implement the required modifications. The modifications to Danielle's IEP included (a) adding extended school year services through a summer program; (b) adding objectives to the IEP to address comprehension of math word problems; (c) adding consultation to the inclusion teachers; and (d) including more technology in the program. Ms. Axelrod found these modifications to be sufficient. [AR, Vol. I, p. 252].

After consideration of Ms. Axelrod's recommendations, as well as rebuttal testimony from Parents' expert, the Hearing Officer found that Sharon's modified IEP could provide Danielle with FAPE. [AR, Vol I, p. 256]. She ordered that the IEP be amended to include a 1:1 tutorial in decoding, reading comprehension and fluency, consultation by a Speech and Language therapist, special education teacher and Ms. Axelrod, and extended summer program in language immersion, a FastForward tutorial in the summer, and monitoring through assessment by an outside evaluator. [AR, Vol. I, p. 258].

An IEP is appropriate under IDEA if it provides instruction and support services which are reasonably calculated to confer educational benefits to the student. Hampton School Dist. v. Dobrowolski, 976 F.2d 48, 50 (1st Cir. 1992). Parents have not met their burden of establishing that the modified IEP ordered by the Hearing Officer was not "reasonably calculated to confer educational benefits" upon Danielle. Rather, a review of the record demonstrates that the Hearing Officer made a thoughtful, reasoned decision, with active participation by a well-

---

[15] The specific components of the recommended program are found at Page 7 of the Final Decision.

qualified independent evaluator.   For this reason, Summary Judgment should enter in Sharon's favor on Count I.

WHEREFORE, the School Committee Defendants respectfully request that this Court enter an order as follows;

1.    Striking the Parents' Motion for Summary Judgment, or Denying Parents' Motion for Summary Judgment;

2.    Entering Summary Judgment in favor of the School Committee Defendants on Count I; and

3.    Any other relief which this Court deems appropriate.

SCHOOL COMMITTEE FOR THE TOWN OF
SHARON:  SAM LIAO, ANDREW NEBENZAHL,
DONALD GILLIGAN, JANE FURR, MITCH
BLAUSTEIN, AND SUZANNE PEYTON

By their attorneys,

/s/ Tammy L. Richardson
Barry L. Mintzer, BBO #348940
Tammy L. Richardson, BBO #567766
Deutsch Williams Brooks DeRensis &
 Holland, PC
99 Summer Street
Boston, MA  02110
(617) 951-2300

DWLIB 192592v2
129/00