## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-10994-NMG

PARENTS OF DANIELLE,

                            Plaintiffs,

        v.

MASSACHUSETTS DEPARTMENT OF
EDUCATION et al.,

                        Defendants**.**

## SCHOOL COMMITTEE DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, defendant School Committee

for the Town of Sharon (Sam Liao, Andrew Nebenzahl, Donald Gilligan, Jane Furr,

Mitch Blaustein, and Suzanne Peyton) ("collectively referred to as "Sharon") respectfully

submit this memorandum in opposition to the motion of plaintiffs Parents of Danielle

("Parents") for summary judgment on their claim seeking judicial review of a decision of

the Department of Education's Bureau of Special Education Appeals ("BSEA"),

concerning special education services provided by Sharon to Danielle.  For the reasons

set forth below, the Court should affirm the BSEA's decision and enter judgment in favor

of defendants on the judicial review claim.[1]  In support of this Opposition, Sharon

---

[1] Parents move for summary judgment on "Count I" of the Complaint, a reference to
their claim for judicial review of the BSEA's decision. The Complaint does not expressly
identify different "Counts" but contains a claim for judicial review of the BSEA's
decision (captioned "Parent's Case for Appeal," Complaint ¶¶ 6-21), a claim for
compensatory damages seeking to recover the cost of placement at the Landmark School

submits the accompanying Statement of Defendant School Committee Pursuant to Local Rule 56.1 ("Sharon's Statement"), constituting Sharon's response to the Parents' Concise Statement of Material Facts.

## STATUTORY FRAMEWORK

The Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C.A. §§ 1400 et seq., provides that, as a condition of receiving federal funding, States must provide a "free appropriate public education" to all children with disabilities. 20 U.S.C.A. § 1412(a)(1)(A) (2005 Supp.)[2]; Pihl v. Massachusetts Dept. of Ed., 9 F.3d 184, 187 (1st Cir. 1993). In Massachusetts, the provision of special education is governed by Mass. G.L. c. 71B § 3 (2004 ed.). See also Roland M. v. Concord School Comm., 910 F.2d 983, 987 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991); Lenn v. Portland School Comm., 998 F.2d 1083, 1086 (1st Cir. 1993). The standard of an "appropriate" education requires that a state provide services in a way "'reasonably calculated to enable the child to receive educational benefits.'" Lenn v. Portland School Comm., 998 F.2d at 1086 (quoting Board of Educ. v. Rowley, 458 U.S. 176, 207 (1982)).

IDEA "imposes extensive procedural requirements on participating state and local agencies to safeguard a disabled student's right to a free appropriate public education."

---

for the 2003-2004 school year (captioned "Parent's Case for Compensatory Damages," Complaint ¶¶ 22-28), and a claim for attorneys' fees (captioned "Parent's Case for Attorney Fees and Costs," Complaint ¶¶ 29-33). Sharon filed a motion for summary judgment on the fee claim in April 2005 but subsequently withdrew that motion in light of its filing of a motion to dismiss the Complaint in its entirety. Although Parents' summary judgment memorandum is confined to a discussion of the claim for judicial review, Sharon addresses as well the claim for compensatory damages, which is in essence an aspect of the judicial review claim.

[2] All citations are to the U.S.C.A. are to the 2005 Pocket Part.

Pihl v. Massachusetts Department of Education, 9 F.3d at 187. The "primary safeguard" is the mandatory development of an individualized education program ("IEP") by the local school district responsible for educating a disabled student. Pihl v. Massachusetts Dept. of Ed., 9 F.3d at 187; 20 U.S.C.A. §§ 1414(d), 1415; G.L. c. 71B, § 3. The IEP, which is developed by the local school district with the parents' participation, is a written document detailing the student's current educational performance, the short-term and long-term goals of the plan, the specific educational services to be provided, and objective criteria to evaluate the student's progress. See 20 U.S.C.A. §§ 1401(14), 1414(d); Lenn v. Portland School Comm., 998 F.2d at 1086; G.L. c. 71B, § 3; 603 C.M.R. §§ 28.02, 28.05.

   Parents or students may challenge an IEP by seeking a due process hearing before the state special education agency. 20 U.S.C.A. § 1415(f); G.L. c. 71B, § 3; Lenn v. Portland School Comm., 998 F.2d at 1086. In Massachusetts, BSEA conducts the due process hearing. G.L. c. 71B, § 3; 603 C.M.R. § 28.08(3), (5).  Proceedings before BSEA are conducted pursuant to the procedures set forth in federal regulations, 34 C.F.R. § 300.506-.513, and in the state Administrative Procedure Act, G.L. c. 30A, and state regulations. See 603 C.M.R. § 28.08(5). The decision of a BSEA hearing officer cannot be subject to review by the Department of Education, see 34 C.F.R. § 300.510(a), 603 C.M.R. § 28.08(6), but parents or students may seek judicial review of a decision by BSEA by filing an action in state or federal court, asserting a claim for review under IDEA. See 20 U.S.C.A. § 1415(i)(2); 603 C.M.R., § 28.08(6).

## PROCEDURAL AND FACTUAL BACKGROUND

The procedural and factual background of this case are as follows. The facts set forth below, which are not in dispute, are also set forth in Sharon's Statement.

During the 2003-2004 school year, Danielle, then aged 13, was a seventh grade student at Sharon Public Schools. Administrative Record ("A.R.") I:182 (BSEA Decision in Sharon Public Schools, BSEA # 03-4311, dated January 12, 2004 ("Decision I"), Finding ¶ 1.[3] In December 1999, in the middle of third grade, Danielle was found to be eligible for special education services, and an IEP was developed to address her language disabilities. A.R. I:184-185 (Decision I, Findings ¶¶ 6,7). Danielle, who was subsequently diagnosed with dyslexia and a central auditory processing disorder, began receiving services in January 2001. A.R. I:183, 185-188, 190, 194, 197-199, 204-205 (Decision I, Findings ¶¶ 2, 7-10, 13, 18, 21, 32, 34, 42, 45, 55).

In April 2003, when Danielle was in sixth grade, Danielle's TEAM convened to discuss Danielle's progress and to develop an amended program covering the period from March 2003 to March 2004. A.R. I:182, 197 (Decision I, Finding ¶ 42). The TEAM proposed an IEP that provided special education services to Danielle at the Sharon Public

---

[3]   The Administrative Record is comprised of three volumes of pleadings and exhibits (cited here by Volume number and page, e.g., A.R. I:25 refers to Volume I, page 25), as well as four transcript volumes (cited here by Transcript Volume number and page, e.g., Tr. I:100 refers to Transcript Volume I, page 100). The record includes the two BSEA decisions related to Danielle. The first decision, dated January 12, 2004, is referred to by Parents and herein as "Decision I," and it appears at A.R. I:180-215. The second decision, dated April 20, 2004, is referred to by Parents and herein as "Decision II," and it appears at A.R. I:244-260. Sharon cites the decisions by reference to the appropriate page number in the Administrative Record as well as, where applicable, the paragraph number in the decisions' factual findings. In the case of Decision I, the Hearing Officer's factual findings are referred to as "Findings" and, in the case of Decision II, the factual findings are referred to as "Supp. Findings," consistent with the terms used in the two decisions.

Schools. A.R. I:197 (Decision I, Finding ¶ 42). Parents accepted the services in the proposed IEP but rejected the placement at Sharon Public Schools. A.R. I:198-199 (Decision I, Finding ¶ 45). At about the same time, Parents sent an application for Danielle to immediately attend, or to attend for the seventh grade, the Landmark School (a language based program in Prides Crossing, Massachusetts) as a day student. A.R. I:198-199 (Decision I, Finding ¶ 45). Landmark initially did not admit Danielle for the 2003-2004 school year (when Danielle would be in seventh grade), because it did not then have an opening, but Landmark subsequently admitted Danielle to begin in late January 2004. A.R. I:200-201, 208 (Decision I, Finding ¶¶ 49, 62). Danielle began seventh grade at the Sharon Middle School in September 2003, where she was in an inclusion program for all of her academic subjects and also received a number of special education services. A.R. I:202-205 (Decision I, Finding ¶¶ 52, 55).[4]

Parents rejected the placement at Sharon proposed by Danielle's TEAM in the April 2003 IEP, covering the period March 2003 to March 2004, and the BSEA conducted an adjudicatory hearing on three days in October 2003. A.R. I:181, 198-199 (Decision I, Finding ¶ 45).[5]  The BSEA Hearing Officer who conducted the hearing framed the issues as follows:

> (1)  Whether the IEP developed in April 2003, designating a program for Danielle at Sharon Middle School for the period March 2003 to March 2004, provide Danielle with a free appropriate public education ("FAPE") in the least restrictive environment ("LRE")?

---

[4]  In particular, Danielle received a number of special education services, including modifications to the inclusion classes such as study guides, daily "pull out" special education instruction, classroom support from paraprofessionals in her English and math classes, and speech and language therapy outside the classroom. A.R I:204-205 (Decision I, ¶¶ 55-56).

[5]  At the BSEA hearing, Parents also challenged the June 2000 IEP and sought compensatory services for Danielle for 2000, which the BSEA rejected. A.R. I:210.

(2)    If not, would modifications to the current program provide a FAPE in the LRE?

(3)    If not, does Danielle require an out of district day program at Landmark in order to achieve a FAPE in the LRE?

A.R. I:182.[6] At the hearing, Parents took the position that Sharon's inclusion program could not provide the language-based program that Danielle required in order to receive a FAPE. A.R. I:192. Sharon's position was that its inclusion program, together with pull out support and related services, addressed Danielle's deficits and provided her with a FAPE. A.R. I:192.

The Hearing Officer issued a decision on January 12, 2004, concluding that Sharon's program as then configured did not provide a FAPE to Danielle. A.R. I:210. In particular, the Hearing Officer concluded that the IEP did not adequately address Danielle's decoding and reading comprehension deficits; it did not provide for a speech/language pathologist and/or special education consultation to the inclusion teachers; and it did not consistently provide the technology recommended to address Danielle's language and auditory processing deficits. A.R. I:246 (Decision II, Supp. Finding ¶ 1). The Hearing Officer concluded, however, that the Landmark School, although a language-based program, did not meet Danielle's individual needs nor did it provide the LRE for Danielle. A.R. I:212-213, 256. The Hearing Officer directed Sharon to fund an independent evaluator to report back to the Hearing Officer after considering the various options, including whether Sharon's program could be modified

---

[6] The hearing officer also identified a fourth issue, concerning Parents' claim that Sharon should provide compensatory speech and language services for the period September-December 2000. The Hearing officer's ruling on that issue (rejecting Parents' claim) is not in question in this action for judicial review. See Complaint, Prayer for Relief.

to meet Danielle's needs, and including the Landmark as an option. A.R. I:212-213. The Hearing Officer also directed Sharon to obtain information concerning other nearby language-based programs that provided the type of services that Danielle required. A.R. I:212.

The independent evaluator chosen by Sharon observed Danielle in her classes at Sharon Middle School on January 27, 2004, and the evaluator (Joan Axelrod) issued a written report concluding that the Sharon program, if modified, would provide Danielle with a FAPE in the LRE. A.R. I:235, 250, 253 (Decision II, Supp. Finding ¶¶ 13, 18). The BSEA convened an additional hearing on March 10, 2004, at which the independent evaluator testified and was examined by the Parents, who also offered testimony of Dr. Robert Kemper to respond to the independent evaluator's conclusions. A.R. I:253-255 (Decision II, Supp. Finding ¶¶ 18-19, 24); Tr. IV:5.

On April 20, 2004, the BSEA issued a second decision ("Decision II"), denying Parents' request for placement in a day program at Landmark on the basis that Landmark did not provide the LRE for Danielle. A.R. I:244, 258. The Hearing Officer also found that Sharon's program could be further modified to meet Danielle's needs and to provide a FAPE in the LRE. A.R. I:256-257. The Hearing Officer ordered Sharon to amend its IEP to provide Danielle with the following additional services: an individual tutorial in decoding, reading comprehension and fluency;[7] consultation among the speech/language

---

[7] The Hearing Officer concluded that Ms. Lanzel, Danielle's special education teacher at Sharon, although not certified in the Wilson method of instruction (a method of instruction that breaks down language to enable students to decode sounds, then syllables, and then words to phrases), nevertheless could provide the decoding, comprehension, and fluency instruction that Sharon had proposed. A.R. I:250, 253-254, 256-257 (Decision II, Supp. Findings ¶¶ 13, 21, 22). In reaching that conclusion, the Hearing Officer relied on testimony and documentary evidence concerning Ms. Lanzel's implementation of

pathologist, special education teacher, and independent evaluator; an extended school

year [typically meaning summer] language immersion program (which could be

Landmark's residential summer program or another summer language-based immersion

program); a tutorial ("FastForward") in the summer; and monitoring by an outside

evaluator. A.R. I:258. The Parents and Sharon subsequently agreed that Danielle would

attend Landmark's summer program to implement that portion of Decision II requiring

Sharon to provide a summer language immersion program. A.R. I:263. Danielle attended

Sharon Public School during the 2004-2005 school year, receiving services as provided

in her IEP (as amended pursuant to the Hearing Officer's order in Decision II).

     Parents filed this action in May 2004, seeking judicial review of the BSEA's

decision. In their first claim ("Parent's Case for Appeal"), Parents challenged, in

particular, BSEA's holding that Sharon's program as modified would provide a FAPE to

Danielle and BSEA's holding that placement at Landmark was not warranted, and

Parents requested that the Court set aside those aspects of BSEA's decision. Complaint

¶¶ 20-21 and Prayer for Relief ¶¶ 1, 3. In their second claim ("Parent's Case for

Compensatory Damages"), Parents alleged that Danielle had not received a FAPE during

2003-2004 school year, and Parents sought an order directing Sharon to pay

"compensatory damages to the plaintiff in an amount equal to the cost of placement at

Landmark Schools for the 2003-2004 school year." Complaint ¶¶ 23-28 and Prayer for

Relief ¶ 5. In a third claim ("Parent's Case for Attorney Fees and Costs"), Parents sought

attorneys' fees and costs in the amount of roughly $58,000 for the BSEA proceedings as

well as an unspecified amount of attorneys' fees and costs incurred in this judicial

---

services. A.R. I:257.

proceeding. Complaint ¶¶ 30-33 and Prayer for Relief ¶ 6. In November 2004, the

Department of Education representing the BSEA filed, as part of its Answer, a certified

copy of the record of administrative proceedings before the BSEA.

As noted above in footnote 1, Parents now seek summary judgment on the claim

for judicial review. For the reasons set forth below, the Court should deny Parents'

motion for summary judgment on that claim (as well as the related claim for

compensatory damages) and enter judgment for the Department on both claims.

## ARGUMENT

I.    **PARENTS' CLAIM FOR JUDICIAL REVIEW, CHALLENGING
      THE BSEA DECISION, IS WITHOUT MERIT, AND THE COURT
      ACCORDINGLY SHOULD AFFIRM THE DECISION.**

A.    **THE STANDARD OF REVIEW IN CASES UNDER
      IDEA IS LIMITED TO "INVOLVED OVERSIGHT"
      OF THE BSEA'S DETERMINATIONS.**

In an action under IDEA seeking review of a BSEA decision, the Court "shall

receive the records of the administrative proceedings; shall hear additional evidence at

the request of a party; and basing its decision on a preponderance of the evidence, shall

grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The

federal statute "contemplates an intermediate standard of review on the trial court level --

a standard which, because it is characterized by independence of judgment, requires a

more critical appraisal of the agency determination than clear-error review entails, but

which, nevertheless, falls well short of complete *de novo* review." Lenn v. Portland

School Comm., 998 F.2d 1083, 1086 (1st Cir. 1993); Shawsheen Valley Regional

Vocational Technical School District School Committee v. Massachusetts Dept. of Ed.,

367 F. Supp. 2d 44, 49 (D. Mass. 2005). A court's role in reviewing a decision by a state

educational agency is limited to one of "involved oversight." <u>Roland M. v. Concord School Comm.</u>, 910 F.2d 983, 989 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991). "In the course of this independent review, the administrative proceedings must be accorded 'due weight.'" <u>Lenn v. Portland School Comm.</u>, 998 F.2d at 1087 (quoting <u>Board of Educ. v. Rowley</u>, 458 U.S. 176, 206 (1982)). A reviewing court "is not at liberty either to turn a blind eye to administrative findings or to discard them without sound reason." <u>Lenn v. Portland School Comm.</u>, 998 F.2d at 1087.

Applying the foregoing standard of review, the Court should affirm the BSEA's decision, as Parents have not presented any persuasive basis for reversing the BSEA's decision.

**B.      PARENTS' CLAIM THAT THE BSEA GAVE TOO MUCH WEIGHT TO THE CONCEPT OF "LEAST RESTRICTIVE ENVIRONMENT" REFLECTS A MISUNDERSTANDING OF THE BSEA'S DECISION.**

Parents devote a considerable portion of their memorandum of law to a somewhat rambling discussion of the relationship between the concepts of "free appropriate public education" ("FAPE") and "least restrictive environment" ("LRE"). The thrust of Parents' argument on this topic is their claim that FAPE and LRE "are not equal, competing requirements or considerations" but rather that FAPE "is the first priority" and must be "served first." Parents' Memorandum of Law in Support of Their Motion for Summary Judgment as to Count I ("Parents' Memorandum"), at 5. Parents thus argue that "[t]he LRE must be subservient to the FAPE" and that learning environments – that is, the extent to which one environment is more restrictive than another – may be considered only after the BSEA first determines that a FAPE can be provided "without compromise of quality in more than one learning environment." Parents' Memorandum, at 5-6.

Parents go on to claim that the BSEA erred in applying the foregoing standards insofar as its decision provided for placement for Danielle at the Sharon Public Schools notwithstanding the Hearing Officer's "finding that a program in the public school's learning environment lacked the required *IEP* elements, lacked efficacy, and lacked teacher certification." Parents' Memorandum, at 7.

Parents' arguments reflect a basic misunderstanding of the Hearing Officer's decision. The Hearing Officer unambiguously determined that Sharon's program, once modified to provide specified additional services to Danielle, would provide a FAPE to Danielle. See Decision II, at 12 ("I find that Sharon's program can be modified to meet Danielle's needs."); Decision II, at 13 ("With these modifications [detailed in the decision] she could achieve a FAPE in the LRE.").[8] The Hearing Officer thus did not "compromise" Danielle's FAPE or "sacrifice" her educational needs in order to serve the purpose of placement in the least restrictive environment (namely, placement in an inclusion setting in the Sharon Public Schools, which is less restrictive than placement at Landmark School, a specialized school for students with language impairments, see 20 U.S.C. § 1412(a)(5)(A)). Instead, the Hearing Officer, having determined that Sharon's program, as modified, would provide a FAPE to Danielle, then determined that Sharon's program as modified would be the appropriate placement for Danielle under IDEA because it provided the least restrictive environment, as compared to the Landmark program also being considered:

---

[8]   The additional services specified by the Hearing Officer, as discussed in the text above, see supra pages 7-8, were as follows: an individual tutorial in decoding, reading comprehension and fluency; consultation among the speech/language pathologist, special education teacher, and independent evaluator; an extended school year language

> This Hearing Officer previously found that Landmark was not the
> least restrictive environment for Danielle. . . . In this case the
> issue is what program provides Danielle a FAPE in the LRE. An
> IEP can only be implemented in separate settings when the nature
> and severity of the child's special needs is such that the student can
> not make meaningful progress in a regular education setting even
> with the use of accommodations and specialized services; see 20
> U.S.C. 1412(5)(A). In this matter accommodations and
> specialized services can make Sharon's current program
> appropriate for Danielle.

A.R. I:258.[9]

The Hearing Officer's determination was entirely consistent with, and indeed

required by, IDEA, which provides that, in order to be eligible for federal funding, a State

must adopt a plan including the following condition:

> To the maximum extent appropriate, children with disabilities . . .
> are educated with children who are not disabled, and special
> classes, separate schooling, or other removal of children with
> disabilities from the regular educational environment occurs only
> when the nature or severity of the disability of a child is such that
> education in regular classes with the use of supplementary aids and
> services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). See also Hampton School District v. Dobrowolski, 976 F.2d

48, 50 (1st Cir. 1992) (IDEA requires state to assure that, to maximum extent appropriate,

education will be provided in the least restrictive environment with children who are not

disabled); Norton School Committee v. Massachusetts Dept. of Ed., 768 F. Supp. 900,

903 (D. Mass. 1991) (section 1412(5) [currently section 1412(a)(5)(A)] imposes a

---

immersion program; a tutorial ("FastForward") in the summer; and monitoring by an
outside evaluator. A.R. I:258.

[9] Further underscoring her conclusion that Sharon's program, as modified, would
provide Danielle with FAPE, the Hearing Officer further noted that "[i]f the public school
program could not have been modified and Sharon was not able to locate an appropriate
program Landmark would have been an option for further exploration. Such is not the
case here." A.R. I:258 n.26.

"mainstreaming" requirement; "[p]ut another way, the handicapped child must be

educated in the least restrictive environment"); Lang v. Braintree School Committee, 545

F. Supp. 1221, 1228 (D. Mass. 1982) (referring to "the mainstreaming approach preferred

by the Act").[10]

In short, the Court should reject Parents' claim that the BSEA improperly gave

too much weight to the LRE standard, as that claim rests on a misunderstanding of the

BSEA's decision.[11]

_____

[10]  See also Monticello School Dist. No. 25 v. George L., 102 F.3d 895, 906 (7th Cir.
1996) ("the IDEA and the case law interpreting the IDEA give strong preference to
mainstreaming students with disabilities . . . . This directive is also referred to as the LRE
requirement.").

[11]  As an aspect of their argument concerning the relationship between FAPE and LRE,
Parents argue that Sharon's program "could not provide the necessary communication
mode in a consistent fashion throughout content area classes" and that the Landmark
program, in contrast, "would do so." Parents' Memorandum, at 13; see also Parents'
Memorandum, at 19 ("Danielle's communication would be best enhanced and most
efficacious at Landmark."). Although the meaning of Parents' argument on this point is
not entirely clear, it appears that they thereby intend to argue that the Landmark program,
but not the program at Sharon, could adequately address Danielle's language-based
disabilities, and that the Hearing Officer accordingly should not have chosen placement
at Sharon. See Parents' Memorandum, at 13 (a program that is able to "by-pass . . . the
effect of the disability on a child's progress" must be chosen over the *LRE* which does
not). But the record contains substantial evidence supporting the Hearing Officer's
conclusion that Sharon's program, with modifications ordered in the Decision, would
provide Danielle with a FAPE, including in particular the written report and testimony of
Ms. Axelrod, who opined that the modifications, together with the special education
services already in place, would adequately meet Danielle's needs. A.R. I:256-258. The
Hearing Officer expressly considered, and rejected, the notion (advanced here in Parents'
memorandum) that Ms. Lanzel's lack of certification in the Wilson method precluded her
from providing appropriate services. A.R. I:254 (Decision II, Supp. Finding ¶ 22), A.R.
I:257, and that conclusion is supported by the opinion of the independent evaluator that
Ms. Lanzel could provide the decoding, comprehension, and fluency instruction set forth
in the IEP. A.R. I:257. The hypothesis advanced by Parents – that Landmark could
provide a better instructional program – even if true, would not provide a basis for
reversal of the BSEA's decision, insofar as the evidence supported the BSEA's
conclusion that Sharon's program would provide Danielle a FAPE, and the IDEA "does
not require school districts to reimburse parents who choose a superior placement for
their child." Hampton School Dist. v. Dobrowolski, 976 F.2d at 52.

### C. PARENTS' RELATED CLAIM THAT THE BSEA PLACED UNDUE EMPHASIS ON "SOCIAL ISSUES" ALSO IS WITHOUT MERIT.

Parents also claim that, in ruling that Sharon's program (as modified) was the proper placement for Danielle, the Hearing Officer "compromised" the FAPE standard and "sacrificed" Danielle's educational needs (in particular her needs resulting from her central auditory processing disorder) to "social concerns" about placement at Landmark. Parents' Memorandum, at 10-11. More specifically, Parents argue that the FAPE "must be driven by the student's . . . .*special* education needs," not "[s]uch issues as popularity," Parents' Memorandum, at 9 (emphasis in original), and Parents further argue that the BSEA's determination that placement at Sharon was appropriate was based on improper consideration of such "social" issues as "Danielle's happiness and popularity" in her current placement at Sharon. Parents' Memorandum, at 11.[12]

---

[12]  Parents repeat a version of this argument elsewhere in their memorandum as well. See Parents' Memorandum, at 9 (stating that full educational opportunity "may not be compromised by social, recreational, or avocational interests, unless those are a function themselves of recognized disabilities which bespeak special education needs warranting response."); Parents' Memorandum, at 7 ("The Hearing Officer finally ordered a public school learning environment, doing so based on 'concern' about Danielle's social life, athletic activities, shyness, and recreational activities, and without attention to the regulatory requirements discussed above.").

The "regulatory requirements" to which Parents refer is 34 C.F.R. § 300.552(d), discussed in the portion of their memorandum immediately preceding the above-quoted sentence regarding the Hearing Officer's "concern" about social issues. The cited regulation provides that, in selecting the least restrictive environment, a local educational agency give consideration to "any potential harmful effect on the child or on the quality of services that he or she needs." 34 C.F.R. § 300.552(d). Parents go on to argue that the foregoing regulation and related regulations permit the Hearing Officer, in assessing any potential harm from a placement, to consider certain "non-academic and social considerations," but Parents argue that such nonacademic considerations may be taken into account "only once a student's academic and educational needs are met." Parents'

The "social issues" to which Parents refer apparently are the Hearing Officer's finding that the independent evaluator, Joan Axelrod, expressed concern "about the costs to Danielle socially and academically if she were to be moved at the current time," in light of Ms. Axelrod's view that Danielle "seemed socially connected and very motivated to complete assigned work (with support)" at her current program at Sharon Public Schools. A.R. I:250 (Decision II, Supp. Finding ¶ 13). The Hearing Officer also noted Ms. Axelrod's opinion that a 3-hour round trip commute to Landmark "would not be emotionally advantageous to Danielle." A.R. I:254 (Decision II, Supp. Finding ¶ 23).

Parents' argument on this issue, too, reflects a misunderstanding of the BSEA's decision.  There is simply nothing in the Decision that even remotely suggests that the Hearing Officer, in making her placement determination, gave significant, let alone determinative, weight to social issues as distinct from academic issues. To the contrary, the Hearing Officer made extensive and detailed findings concerning Danielle's educational deficits, and the manner in which her current program at Sharon, and additional services, could and would meet those needs. A.R. I:256-258. Her passing reference to the independent evaluator's expressed concern about the social impact of placement at Landmark can hardly be considered to constitute giving undue weight to social issues at the expense of more purely educational needs.[13]

---

Memorandum, at 7-8.

As discussed in Argument Section IIB, above, however, the Hearing Officer here found that placement at Sharon, with the further modifications ordered in the Decision, would provide Danielle with a FAPE, and in so doing, the Hearing Officer did not give undue weight to "social" considerations.

[13]  Moreover, a student's social needs appropriately may be considered in determining what type of educational program will provide a FAPE under IDEA. Lenn v. Portland

### D.    THE PARENTS' REMAINING CLAIMS ALSO ARE
WITHOUT MERIT.

Parents also argue that the Hearing Officer erred in determining that placement at

Sharon was appropriate, because, "as between the identified, available *LREs* with *existing*

programs, Landmark was identified as the only *LRE* which would provide an established,

proven, non-experimental placement and program." Parents' Memorandum, at 11

(emphasis in original).  This argument, which appears to challenge the Hearing Officer's

determination to direct Sharon to provide additional services through modification of

Danielle's IEP, is completely without merit.

It is in the very nature of IDEA that special education services be tailored to the

particular needs of each individual student. In this regard, the statute requires that schools

provide an individualized education plan for any student eligible for special education

services.  20 U.S.C. § 1400(d)(1)(A) (purpose of Act is to ensure that disabled children

receive special education services "designed to meet their unique needs"). Where the

needs of a particular student may be met through additional services to be provided by a

school through modifications to its current program, rather than through an existing

program elsewhere, a Hearing Officer is well within her discretion in directing the

provision of such additional services, and the fact that such services are not part of an

"established" program is of no consequence. See, e.g., Monticello School Dist. No. 25 v.

George L., 102 F.3d 895, 900-901, 906 (7th Cir. 1996) (affirming district court decision,

School Comm., 998 F.2d at 1089 ("an IEP must target '*all* of a child's special needs,'
[citing Burlington v. Department of Ed., et al., 736 F.2d 773, 788 (1st Cir. 1984)] whether
they be academic, physical, emotional, or social.") (emphasis added by Court in Lenn). In
any event, even a cursory reading of the BSEA's Decision here makes abundantly clear
that the Hearing Officer, far from placing great weight on social issues, focused in large

which in turn affirmed hearing officer's decision rejecting parents' proposed placement of student in private school and ordering that modifications be made to student's current IEP to correct its deficiencies).

Parents also argue that the Hearing Officer erred in ordering that Danielle be placed at Sharon because both federal and state law require that "Danielle be relieved of participating with a population of students afflicted with bad behavior, sick thinking, and mental health and behavioral treatment." Parents' Memorandum, at 20. In a similar vein, Parents elsewhere in their memorandum argue that the Hearing Officer failed to consider "the risks of exposing Danielle to an emotionally disturbed or behaviorally disordered population" at Sharon. Parents' Memorandum, at 12.

This offensive argument should be rejected out of hand. Parents present no support (in the record or elsewhere) for their contention that the student population at Sharon is "emotionally disturbed or behaviorally disordered."[14] Moreover, Parents' suggestion that placement at Sharon is more "restrictive" than placement at Landmark School due to the Sharon student population's "mental health diagnosis," see Parents' Memorandum at 12, is directly contrary to the express language of IDEA, which, as noted above, requires that to the maximum extent appropriate, students with disabilities be educated in "the regular educational environment" rather than being placed in a

_____

part on the <u>educational</u> components of placement at Sharon, in reaching her determination.

[14]    In their memorandum, at page 12, Parents cite "Fact No. 16" following their statement, quoted in the text above, concerning "the risks of exposing Danielle to an emotionally disturbed or behaviorally disordered population." But paragraph 16 in the factual findings sections of both of the Hearing Officer's Decisions have nothing to do with the student population at Sharon, and Parents present no other citation to support their strange claim. A.R. I:187, 252.

separate program for disabled students. 20 U.S.C. § 1412(a)(5)(A).[15]

Parents also advance the curious claim that the BSEA's Decision violates the "No Child Left Behind Act," Pub. L. 107-110 of 2002, 115 Stat. 1425, arguing that that legislation requires that every school provides the "best possible education to each student," a standard that Parents contend sets a higher threshold than the "free appropriate public education" standard set forth in IDEA. Parents' Memorandum, at 16. The Act, which is a general funding statute for public elementary and secondary schools (conditioning federal funding on schools attaining certain academic standards), does not purport to establish a standard governing the level of special education services that must be provided to particular eligible students; the statute governing the provision of special education services is IDEA. Moreover, the No Child Left Behind Act does not create a private right of action for individuals. See Association of Community Organizations for Reform Now v. New York City Department of Education, 269 F. Supp. 2d 338 (S.D.N.Y. 2003).

## II. PARENTS' CLAIM FOR "COMPENSATORY DAMAGES" SHOULD BE REJECTED.

In their second claim, Parents alleged that Danielle had not received a FAPE

---

[15]  Parents assert the related point that placement at Landmark would not be restrictive; and, apparently to illustrate that point, Parents distinguish between a voluntary residential placement at Landmark" and involuntary institutionalization in a mental health facility. Parents' Memorandum, at 15 ("the Landmark experience cannot be said to mimic involuntary hospitalization, but rather to mimic a college campus."). This argument misses the mark completely. Nowhere in its decision did the BSEA suggest that placement at Landmark was the more restrictive placement because it was akin to involuntary institutionalization. Rather, in finding that Sharon was the least restrictive placement for Danielle, the BSEA was merely adhering to the statutorily expressed notion that placement in a regular school program – here, the inclusion program at Sharon supplemented with certain special education services – constitutes a less restrictive environment and is the preferred placement.

during the period March 2003 to March 2004, citing the Hearing Officer's determination

that Sharon's IEP for that period did not provide Danielle with a FAPE. Complaint, ¶ 23,

28. Parents further alleged that Danielle could have entered Landmark in January 2004,

but that the Hearing Officer did not render her decision until March 2004. Complaint, ¶

27.[16]  Parents sought an order directing Sharon to pay "compensatory damages to the

plaintiff in an amount equal to the cost of placement at Landmark Schools for the 2003-

2004 school year." Complaint ¶¶ 23-28 and Prayer for Relief ¶ 5.

      The Court should reject Parents' claim for "compensatory damages," as Parents,

although couching their request for monetary relief as a request for "compensatory

damages" (in an amount equal to the cost of placement at Landmark during the 2003-

2004 school year), are not thereby seeking reimbursement for actual expenses incurred,

insofar as Danielle attended Sharon – not Landmark – during that period of time; nor are

Parents seeking compensatory educational services. It is well established that, under

IDEA, compensatory educational services are available to remedy past deprivations

under the Act, such as, for example, where the services provided by a school under an

IEP are later determined to be inadequate. Pihl v. Massachusetts Department of

Education, 9 F.3d at 187-189. Thus, "[i]f an IEP from a past year is found to be deficient,

the Act may require services at a future time to compensate for what was lost." Pihl v.

Massachusetts Dept. of Ed., 9 F.3d at 189. In addition, a student (or his parents) may seek

reimbursement for costs actually incurred for special education services that should have

been (but were not) provided. See Burlington School Committee v. Massachusetts Dept.

---

[16]  In fact, the Hearing Officer issued the first decision on January 12, 2004, and she
issued the second decision on April 20, 2004.

of Ed., 471 U.S. 359 (1985) (court's authority to grant relief under IDEA included power to order school to reimburse parents for their expenditures on private school education for child if court ultimately determined that such placement, rather than proposed IEP, is proper under the Act).

Such compensatory services (or reimbursement for actual costs incurred) are distinguishable from monetary "damages." Frazier v. Fairhaven School Committee, 276 F.3d 52, 64 n.4 (1st Cir. 2002) (stating that courts typically treat reimbursement claims differently from claims for damages, and citing Hall v. Knott County Bd. of Educ., 941 F.2d 402, 407 (6th Cir. 1991), cert. denied, 502 U.S. 1077 (1992), where the Sixth Circuit, citing the Supreme Court's decision in Burlington, 471 U.S. 359, 371, stated that claims for reimbursement of out of pocket expenses for special education services should not be characterized as "damages"). In contrast, monetary "damages" are not available under IDEA except in "exceptional circumstances" such as where a school exhibits a "flagrant and egregious disregard of" the Act's procedural requirements. Gerasimou v. Ambach, 636 F.Supp. 1504, 1512 (E.D.N.Y. 1986).

Here, Parents are neither seeking reimbursement for actual expenses incurred in placing Danielle at Landmark, nor do they seek compensatory services.[17] In addition, Parents do not set forth any facts suggesting the existence of "exceptional circumstances" that would warrant an award of monetary damages against Sharon. The Court accordingly should reject Parents' claim for "compensatory damages."

**CONCLUSION**

---

[17]    Although Parents theoretically could have sought compensatory services for the period covered by the March 2003-March 2004 IEP, which was found not to provide a FAPE, they did not seek such relief at BSEA for that period.

For the reasons set forth above, Sharon respectfully requests that the Court deny Parents' motion for summary judgment and enter judgment for Sharon on Parents' claim for judicial review and the claim for compensatory damages.

Respectfully submitted,

SCHOOL COMMITTEE FOR THE TOWN OF SHARON: SAM LIAO, ANDREW NEBENZAHL, DONALD GILLIGAN, JANE FURR, MITCH BLAUSTEIN, AND SUZANNE PEYTON

By their attorney,


/s/ Barry L. Mintzer
Barry L. Mintzer, BBO # 348940
Deutsch Williams Brooks DeRensis
& Holland, P.C.
99 Summer Street
Boston, Massachusetts 02110
(617) 951-2300

Dated: February 23, 2006


## CERTIFICATE OF SERVICE

I hereby certify that the above document will be served on February 23, 2006, by electronic notice for registered counsel and a copy will be served by first-class mail, postage prepaid, for non-registered counsel.


/s/ Barry L. Mintzer

Barry L. Mintzer


DWLIB 195758v1