United States District Court
District of Massachusetts

|  |  |
|---|---|
| PARENTS OF DANIELLE,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>MASSACHUSETTS DEPARTMENT OF<br>EDUCATION et al.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)　Civil Action No.<br>)　04-10994-NMG<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM & ORDER**

GORTON, J.

　　The plaintiffs, Parents of Danielle ("the Parents"), filed a complaint against the defendants, the Massachusetts Department of Education, through its Commissioner, David P. Driscoll, (collectively, "the Department") and the School Committee for the Town of Sharon ("Sharon"), seeking review of a decision by the Bureau of Special Education Appeals of the Massachusetts Board of Education ("the BSEA"). Now pending before the Court are dispositive motions relating to the BSEA's decision.

I.　**Factual Background**

　　Danielle, a pseudonym for plaintiffs' daughter, is a 15-year-old girl who resides with her family in Sharon, Massachusetts. In late 1999 and early 2000, Danielle was diagnosed with language and auditory-based learning disabilities

after being evaluated pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("the IDEA"), and Mass. Gen. Laws ch. 71B. In accordance with the IDEA's purpose of ensuring a "free appropriate public education" ("FAPE") to children with disabilities, 20 U.S.C. § 1400(d)(1)(A), a team of persons knowledgeable about Danielle's needs ("the Team") was convened to create an Individualized Educational Plan ("IEP") for her, see 603 Mass. Code Regs. 28.02, 28.05; 34 C.F.R. §§ 300.344, 300.522. From December, 1999, to December, 2000, the Team proposed three different IEPs in response to evaluations of Danielle that were conducted over the course of that year. At least some of those evaluations were privately arranged by the Parents who also hired an educational advocate to assist them. The Parents apparently did not accept the first two proposed IEPs. Although they accepted the services proposed in the third IEP, submitted to them in December, 2000, they rejected the recommendation that Danielle remain in a Sharon public school.

Danielle began receiving services pursuant to the December, 2000, IEP in January, 2001. Based on testing and evaluations conducted that spring, some of which documented improvement in Danielle's skills, the Team proposed an amended IEP to the Parents in June, 2001. In September, 2001, the Parents accepted the services proposed but again rejected Danielle's placement in

the local public school. Evaluations of Danielle's progress in the first half of 2002 were mixed. Some tests indicated that her skills had worsened during the preceding two years while other reports were more favorable. After reconvening to discuss Danielle's case in May, 2002, the Team proposed an amended IEP that modestly increased Danielle's instructional support but did not implement all of the recommendations made by a psycholinguist, Dr. Robert Kemper ("Dr. Kemper"), who had evaluated Danielle in February, 2002. The Parents formally rejected the amended IEP in June, 2002, but accepted the increased services pending resolution of their dispute. In the meantime, they considered placing Danielle at a private school. During the 2002-03 school year, Danielle's academic ability showed modest improvement but she continued to perform at a below-average level. The Team proposed two IEPs during that year which included moderate alterations to the prior proposals.

In April, 2003, the Parents accepted the services proposed by the Team but continued to reject Danielle's placement in public school. At about the same time, they requested a hearing by the BSEA and applied to have Danielle admitted as a day student at the Landmark School ("Landmark"), a language-based, special needs school located on the northshore of Boston, approximately 60 miles northeast of Sharon. Landmark did not admit Danielle to start in the Fall of 2003

-3-

because it lacked an opening but it did admit her to start in January, 2004. Danielle entered the Sharon Middle School in the Fall of 2003 where she received certain "pull-out" special education instruction and therapy.

A three-day hearing was held before the BSEA in October, 2003, at which the presiding officer, Joan Beron ("Hrg. Of'r. Beron"), heard testimony from 12 witnesses. On January 12, 2004, after considering the hearing testimony and numerous exhibits, Hrg. Of'r. Beron ruled that Danielle's IEP, as then currently configured, failed to provide a FAPE as required by the IDEA. She also determined that: 1) the Town of Sharon need not reimburse the Parents for private instruction they had obtained for Danielle and 2) programs other than Landmark should be considered before a decision was made to send Danielle to Landmark. The hearing officer's latter decision was informed by Danielle's personal desire not to attend Landmark and by its location 60 miles from Sharon. In order to facilitate a FAPE for Danielle, Hrg. Of'r. Beron required Sharon: 1) to "locate or create a language based program" that would provide Danielle adequate support, 2) to seek referral information from other language-based day programs and 3) to fund independent evaluations of Danielle and available educational programs. Once reports of those evaluations had been submitted, the BSEA planned to reconvene the hearing on the matter.

Pursuant to the directions of Hrg. Of'r. Beron, independent evaluations of Danielle and available programs were conducted and a report by the evaluator, a psychoeducational diagnostician, Joan Axelrod ("Ms. Axelrod"), was submitted to the BSEA in February, 2004. The hearing was reconvened on March 10, 2004, and testimony of three witnesses taken. On the basis of that testimony and additional exhibits, Hrg. Of'r. Beron issued her decision on April 20, 2004, in which she ruled that Danielle's current program could be modified to meet her needs and that the Parents' request that she be placed in a day or residential program at Landmark should be denied. Recommended modifications to Danielle's current IEP included: 1) individualized, increased tutorials in specific areas, 2) consultation among a speech and language pathologist, Ms. Axelrod and Danielle's teachers, 3) employment of a tutorial recommended by Dr. Kemper and designed to facilitate auditory processing, 4) Danielle's attendance during the summer at a language-based immersion program, with Landmark being an appropriate possibility, and 5) ongoing monitoring by an outside evaluator.

The decision of Hrg. Of'r. Beron was principally based upon the report and testimony of the evaluator, Ms. Axelrod, whose recommendations derived from 1) conversation with Danielle's mother, 2) meetings with a number of Danielle's instructors, 3) observation of nearly all of her instruction (both special and

inclusion) and 4) private discussion with and testing of Danielle. After concluding her evaluation, Ms. Axelrod presented her findings and recommendations to the parties and discussed with them the possibility of implementing her recommendations through a modification of Danielle's then-current program at the Sharon Middle School.

When Ms. Axelrod was asked at the hearing whether Landmark would be an appropriate program for Danielle, she stated that it would be appropriate as an academic matter but that Danielle's attendance there could create emotional hardship given her enjoyment at her public school and the necessity of a three-hour daily commute to Landmark. Ms. Axelrod suggested that a summer residential program at Landmark or another school would be a good option.

Dr. Kemper, who had evaluated Danielle in February and September, 2003, and who had provided a report and testimony concerning those evaluations at the October, 2003, hearing, disagreed with a number of Ms. Axelrod's conclusions and proposals. He recommended that Danielle be placed at Landmark, suggesting that she would not be emotionally harmed by her attendance there despite her asserted desire to remain at the Sharon Middle School.

Notwithstanding the contrary testimony of Dr. Kemper, Hrg. Of'r. Beron "placed considerable weight on Ms. Axelrod's

recommendations" in light of her considerable experience, personal observation of Danielle's situation and evidence of objectivity. With respect to concerns raised by Dr. Kemper, Hrg. Of'r. Beron found that many of his recommendations could or would be met by a modified program. In addition, she discounted some of his findings on the grounds that his evaluation of Danielle had not been comprehensive and some of his conclusions had been articulated in a misleading manner. Ultimately, she also disagreed with his recommendation that Danielle be placed at Landmark because it was not the "least restrictive environment".[1]

## II. Procedural History

In May, 2004, the Parents filed a complaint against the Department and Sharon over which this Court has jurisdiction pursuant to 20 U.S.C. § 1415(i). The complaint alleges that the BSEA decision preventing the placement of Danielle at Landmark and affirming the adequacy of Sharon's IEP, as modified by Hrg. Of'r. Beron's instructions, was against the preponderance of the evidence, arbitrary and capricious, an abuse of discretion and not in accordance with law. The Parents seek compensatory

---

[1] The IDEA provides that states should make a FAPE available in the "least restrictive environment", meaning an inclusive environment in which children with disabilities are, "[t]o the maximum extent appropriate", educated with children who do not have disabilities. 20 U.S.C. § 1412(a)(5)(A). Regulations promulgated under the statute indicate that determinations of the least restrictive environment should also take into account the proximity of placement to the child's home and what school she would attend if she had no disability. 34 C.F.R. § 300.552.

damages in an amount equal to the cost of placing Danielle at Landmark for the 2003-04 school year, attorney's fees and costs, and an order requiring Sharon to send Danielle to Landmark.

At the request of the Parents and without opposition from defendants, the scheduling conference in this case was continued several times. On April 13, 2005, Sharon filed a motion for summary judgment on plaintiffs' claim for attorney's fees and costs. At a scheduling conference a few days later, the Court ordered plaintiffs to file any response to that motion on or before April 29, 2005. In addition, the Court established a pretrial schedule which imposed a deadline for the completion of discovery on or before July 10, 2005, and for the filing of dispositive motions and any responses thereto on or before August 8, 2005.

The Parents filed an opposition to Sharon's motion for summary judgment on May 9, 2005. Although the Court granted Sharon leave to file a reply, it did not do so. On July 22, 2005, before the Court had ruled on the motion for summary judgment, Sharon withdrew that motion and simultaneously filed a motion to dismiss the case which the Parents opposed.

Thereafter, on December 13, 2005, the Parents filed a motion for summary judgment (which was noncompliant with local rules with respect to spacing and length). Sharon opposed that motion and moved to strike it on the grounds that the Parents had failed

to prosecute the case adequately.  Although the Parents apparently had not responded to defendants' discovery requests, they disputed the contention that they had failed to prosecute the action and asserted that their tardiness was caused by an abrupt change of counsel.  After consideration of the parties' positions, the Court entered an order on January 11, 2006, that 1) denied Sharon's motion to dismiss, without prejudice, 2) directed the Parents to respond promptly to discovery requests and to resubmit their motion for summary judgment in compliance with local court rules and 3) permitted defendants additional time to respond to the Parents' motion for summary judgment and/or to file their own dispositive motion.

In January, 2006, the Parents resubmitted their motion for summary judgment.  Defendants have filed separate but identical oppositions to that motion in which they request that the Court affirm the decision of the BSEA and enter judgment in their favor in all respects.  Although those oppositions are not denominated as cross-motions for summary judgment, the Court treats them as such because of the relief sought therein.

### III. Discussion

#### A. Legal Standard

Pursuant to 20 U.S.C. § 1415(i)(2)(C), this Court's decision shall be based upon a "preponderance of the evidence" after consideration of the administrative record and additional

evidence, if requested by a party. The appropriate standard of review has been described as "intermediate ... requir[ing] a more critical appraisal of the agency determination than clear-error review entails, but ... fall[ing] well short of complete de novo review". Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993) (citations omitted). The reviewing judge is to accord the administrative proceedings "due weight" and "is not at liberty either to turn a blind eye to administrative findings or to discard them without sound reason". Id. at 1087 (citations omitted).

### B. Analysis

The Parents contend that Hrg. Of'r. Beron's decision was infirm because it contravened regulations designed to assure the provision of a FAPE to students with disabilities. They maintain that the modified IEP approved by Hrg. Of'r. Beron fails to provide Danielle a "full educational opportunity", 34 C.F.R. §§ 300.123, 300.304, because it elevates considerations of Danielle's social interests above her educational needs. The Parents argue that because Landmark was demonstrated to be an appropriate placement for Danielle, the decision to keep her in the Sharon public school system pursuant to an unproven educational plan comprising a hodgepodge of services was unwarranted.

Defendants respond that Hrg. Of'r. Beron did not place undue

weight on Danielle's personal interest in remaining within the Sharon school system. They contend that her conclusion that Danielle's current placement was in the "least restrictive environment" was considered separately from, and not superior to or at the expense of, her determination that Danielle could receive a FAPE within the Sharon public school system. Thus, defendants aver that the final decision was not reached by sacrificing on compromising Danielle's educational needs for the sake of her social or avocational interests. Rather, once the hearing officer determined that a FAPE could be provided within the Sharon public school system, she reasonably found that Danielle's current school, not Landmark, represented the least restrictive environment.

After considering the administrative record, contentions of the parties and relevant legal precedent, the Court agrees with defendants. The free appropriate public education that eligible school districts are required to make available under the IDEA is not necessarily the best possible education. As described by the First Circuit Court of Appeals, the IDEA "emphasizes an appropriate, rather than an ideal, education; it requires an adequate, rather than an optimal, IEP". Lenn, 998 F.2d at 1086. See also Bd. of Educ. v. Rowley, 458 U.S. 176, 198 (1982). Thus, the First Circuit counsels that judicial review of IEPs should focus upon their appropriateness and adequacy, "terms of

moderation". <u>Lenn</u>, 998 F.2d at 1086.

In this case, the administrative proceedings amply document that Hrg. Of'r. Beron's determination that Sharon's IEP, once modified to comply with her instructions, would provide Danielle a FAPE, was both well-reasoned and informed.  To the extent that her proposed modification of the IEP either included or omitted certain recommendations made by Ms. Axelrod and Dr. Kemper, Hrg. Of'r. Beron adequately demonstrated the basis for her decisions. The Court discerns no evidence that the IEP, as modified, was either inadequate or inappropriate, and it will not, therefore, invalidate the decision of Hrg. Of'r. Beron.

In addition, the Court finds that plaintiffs are not entitled to "compensatory damages" or attorney's fees and costs. To be sure, the record supports the Parents' contention that Sharon failed to provide Danielle a FAPE in the 2003-04 school year.  Indeed, that very determination was made by Hrg. Of'r. Beron.  The Parents are not, however, entitled to "compensation" equal to the cost of placing Danielle at Landmark because they did not prove that her placement there was necessary nor did they incur the cost of sending her there.  Attorney's fees and costs will not be awarded because the Parents did not prevail in this action.  <u>See</u> 20 U.S.C. § 1415(i)(3)(B).

**ORDER**

In accordance with the foregoing, Plaintiffs' Motion for Summary Judgment (Docket No. 56) is **DENIED** and Defendants' Oppositions thereto, which the Court treats as Cross-Motions for Summary Judgment, (Docket Nos. 62 and 64) are **ALLOWED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated: April 7, 2006